UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INEOS POLYMERS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 07CV2817 |
| | ) | |
| BASF AKTIENGESELLSCHAFT and BASF CATALYSTS LLC, | ) ) | Hon. Blanche M. Manning |
| | ) | Magistrate Arlander Keys |
| Defendants. | ) | |

**DEFENDANT BASF CATALYSTS LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND, THIRD AND FOURTH CLAIMS OF PLAINTIFF'S THIRD AMENDED COMPLAINT**

John N. Scholnick
Roger Pascal
Nick Kahlon
**SCHIFF HARDIN LLP**
233 S. Wacker Drive
6600 Sears Tower
Chicago, IL 60606
312-258-5813 (direct)

*Attorneys for Defendant BASF Catalysts LLC*

# INTRODUCTION

INEOS filed this lawsuit in May 2007, claiming that BASF Catalysts had breached a 1992 Catalyst Supply Agreement (the "Supply Agreement") and that BASF Aktiengesellschaft ("BASF SE") had tortiously interfered with that contract. INEOS's principal allegation is that BASF Catalysts breached a so-called "amended" right of first refusal in Article 17 of the Supply Agreement, which was allegedly triggered by a $5 billion hostile acquisition in June 2006 of Engelhard Corporation by a United States entity affiliated with BASF SE. Because the "amended" right of first refusal is silent on the point, INEOS does not allege how the price it would have to pay for whatever it would acquire by exercising the right of first refusal would be determined; it asserts only that the price would have to be determined by expert testimony.[1]

INEOS's Third Amended Complaint[2] alleges four claims against BASF Catalysts. BASF Catalysts moves to dismiss the Second, Third and Fourth Claims of the Complaint on the following grounds:

- The Second Claim – for breach of the "amended" right of first refusal – fails because the right is unenforceable in that it contains no mechanism for determining the price that INEOS must pay for the assets it claims are subject to the right. Despite three successive attempts to replead, INEOS fails to describe, even in general terms, how the "amended" right of first refusal could actually operate in the context of a hostile tender offer when no offer was made for the assets allegedly subject to the right. The right of first refusal is also void as against the applicable rule against perpetuities under Texas law.

---

[1] *See, e.g.,* Plaintiff's Memorandum of Law in Opposition to Defendants' Rule 12(b)(6) Motions to Dismiss the Amended Complaint, Jan. 8, 2008, Dkt. No. 47, at 8.

[2] On February 15, 2008, Judge Milton I. Shadur granted BASF Catalysts' motion to dismiss INEOS's Second Amended Complaint for lack of standing, without reaching the merits of BASF Catalysts' other grounds for dismissal, including the unenforceability of the right of first refusal. On January 13, 2009 the United States Court of Appeals for the Seventh Circuit reversed Judge Shadur's dismissal, ruling only that it was not clear, based on the facts alleged by INEOS, that INEOS lacked standing. The Seventh Circuit did not address the enforceability of the right of first refusal.

- The Third Claim – for breach of other parts of the Supply Agreement – fails for separate reasons. The alleged breach of Article 8 of the Supply Agreement should be dismissed for the failure to allege the occurrence of a condition precedent. INEOS's claim regarding other alleged breaches after Judge Shadur's ruled that INEOS lacked standing to enforce the Supply Agreement, and before the Seventh Circuit reinstated the lawsuit, should be dismissed because BASF Catalysts had a legal right to rely on the judgment entered by Judge Shadur that INEOS could not enforce the contract.

- The Fourth Claim – for breach of contract due to improper termination of the Supply Agreement – fails as a matter of law because BASF Catalysts properly terminated the contract. Article 14 of the Supply Agreement gives either party a right to terminate "if a party enters into an agreement with creditors regarding restructuring or deferral of payment of debt . . . or takes or suffers any similar action in consequence of debt. . . ." In November 2008 INEOS admittedly entered into an agreement with creditors to waive certain of its debt covenants in order to avoid a default on its loans, which was a "restructuring" or other "action in consequence of debt" and by the plain language of Article 14 entitled BASF Catalysts to terminate the contract.

Each of these claims should be dismissed with prejudice.[3]

## BACKGROUND

**A.     The Supply Agreement.**

According to INEOS, this action arises out of a Supply Agreement formed in 1992 between Catalyst Resources, Inc. ("CRI") and Amoco Chemical. (Compl., ¶ 1.) That contract's stated purpose was to allow CRI to supply to Amoco Chemical certain "CD-Catalysts" used in the production of polypropylene (a thermoplastic polymer) from CRI's premises in Bayport, Texas. (*See* Compl., Ex. A-1, at 2.) The contract provided that CRI would construct a new facility at its Bayport, Texas premises to manufacture the CD-Catalysts, with reimbursement from Amoco Chemical for the funding required for the facility. (*See id.*) According to the Complaint, Amoco Chemical entered into the contract "because it required a guaranteed long-term source of CD-Catalyst at a reasonable price." (Compl., ¶ 2.)

---

[3] BASF Catalysts only moves to dismiss INEOS's Second, Third, and Fourth claims. Although INEOS improperly pled its Fifth Claim, BASF Catalysts reserves the right to respond to the claim, including the assertion of all affirmative defenses and the defense that the Fifth Claim fails to state a claim.

Given the parties' joint contributions to the project, the Supply Agreement set forth detailed provisions governing how the facility would be constructed, and how it could be expanded in the future. (*See* Compl., Ex. A-1, Art. 2, at 10-19; Compl., Ex. A-2, Art. 8, at 58-74.) If the parties did not agree regarding a project proposed by Amoco Chemical to increase the plant's capacity, they specified that the project would proceed only if Amoco Chemical agreed to pay for its costs. (*See* Compl., Ex. A-2, Art. 8.C, at 67.)

The Supply Agreement also contained a "Right of First Refusal" provision which allowed Amoco Chemical to match the terms of an offer made for CRI or an offer made for the new facility to be constructed by CRI, "whichever is applicable":

> 17.A. During the term of this Agreement, neither CRI nor Phillips, which indirectly wholly owns CRI, shall sell, transfer, assign, grant any option with respect to, merge, or otherwise dispose of any of the ownership or control of CRI, or any part of the Plant or of the Plant Site, or allow any of the foregoing to occur, unless: (i) **CRI or Phillips has received a bona fide arm's-length offer to transfer the entire ownership or control of CRI, or to transfer the ownership or control of certain assets of CRI**, ... **to such party or parties**; (ii) CRI or Phillips has determined that it is willing to accept such offer; (iii) CRI or Phillips has notified Amoco, in writing, of the terms and conditions of such offer; (iv) **CRI or Phillips has first afforded Amoco the option to buy all of CRI or to buy all of the certain assets of CRI**, ... *whichever is applicable*, **on terms and conditions no less favorable to Amoco than those contained in the offer;** and (v) Amoco does not exercise its option to buy all of CRI or to buy all of the certain assets, ... whichever is applicable, on such terms and conditions within ninety (90) days of receipt of the written notification referred to in (iii) above.

(*See* Compl., Ex. A-2, Art. 17.A, at 95-96 (emphasis added).) The provision further stated that if Amoco Chemical failed to exercise its right of first refusal, the option would remain binding on subsequent transferees. (Compl., Ex. A-2, Art. 17.C, at 97.) Phillips, as the parent of CRI, agreed to be bound by the provision. (*See* Compl., Ex. A-2, at 106.) The right of first refusal

3

was not, however, triggered by any change of control of <u>Phillips</u>, which explains why no pricing mechanism was created to accommodate any such change of control.[4]

**B. The So-Called "Amended" Right of First Refusal.**

INEOS claims that Engelhard/BASF Catalysts breached the right of first refusal in the Supply Agreement by failing to provide INEOS with notice and "the option to buy the assets contemplated in the Supply Agreement" when Engelhard was acquired by an affiliate of BASF SE. (Compl., ¶¶ 9, 90.) The Supply Agreement, however, says nothing about the right of first refusal being triggered upon a change of control of <u>CRI's parent</u> – Phillips and later Engelhard – which is why it provided no method for determining the price of CRI or its assets in such an event. The only option afforded to Amoco Chemical (and allegedly now INEOS) was to match a bona fide offer to purchase CRI or its assets, on the terms contained in that offer.

INEOS contends that this right of first refusal was modified by two letter agreements executed in 1999 and 2005. According to INEOS, Amoco Chemical waived its right of first refusal when "the CRI business" was transferred by Phillips to Mallinckrodt in 1994, and when it was transferred again by Mallinckrodt to Engelhard in 1998. (Compl., ¶ 40.) However, when Engelhard sold certain of CRI's assets to Chase Equipment Leasing, Inc. in 1999 in a leaseback transaction, and entered into a similar transaction with Key Corporate Capital, Inc. in 2005, BP Amoco Polymers Inc. (alleged to be a successor of Amoco Chemical) and BP Amoco Chemical Company (not identified in the Complaint) entered into letter agreements with Engelhard which

---

[4] INEOS asserts that it is "the successor entity to the rights and duties of Amoco Chemical," as an assignee of Amoco Chemical, which, after several corporate reorganizations, allegedly became INEOS Polymers Inc. (Compl., ¶¶ 1, 29-35.) INEOS alleges that Phillips sold "the CRI business" to Mallinckrodt, Inc. in 1994, which in turn sold "the CRI business" to Engelhard Corporation ("Engelhard") in 1998. (Compl., ¶ 40.) In 2006, an affiliate of BASF SE acquired control of Engelhard through a hostile takeover, and renamed it BASF Catalysts. (*See* Compl., ¶¶ 43-44, 51.) According to INEOS, BASF Catalysts is now the successor entity to the rights and duties of both CRI and Phillips. (Compl., ¶ 1.)

4

stated that "Article 17 of the Agreement shall remain in full force and affect and apply to all other transfers described in Article 17 (including, without limitation, any change of control of Engelhard) ..." (*See* Compl., ¶¶ 31, 41-42; Compl., Ex. B, at 2; Compl., Ex. C at 2.) According to INEOS, this confirmatory parenthetical "amended" the right of first refusal to give Amoco Chemical (and allegedly now INEOS) the option to purchase CRI or its assets in the event there was any change of control of Engelhard. (Compl., ¶ 6.)

There are any number of defects in INEOS's theory, the simplest of which is that it does not make sense. Although Judge Shadur did not reach the merits of INEOS's theory, he correctly recognized that the theory seemed unworkable on its face:

> Although the following observation is really rendered parenthetical by the conclusion and result reached here, it is worth noting that this Court has been troubled from the outset as to just how INEOS' attempted invocation of the right of first refusal spelled out in Agreement Art. 17.A could work . . .
>
> Here BASF's acquisition of what had originally been the CRI position in the Agreement came via a hostile takeover that originated in a tender offer but that, after rejection by the Board of the target company, resulted in a Merger Agreement. Because that transaction, rather than a sale of assets or a share purchase, does not comfortably fit into the language of the option spelled out in Art. 17.A (just how does a merger transaction get translated into "terms and conditions . . . no less favorable . . . than those contained in the offer"?), INEOS' counsel seem to have performed a sleight of hand by casting its [complaint's] Prayer for Relief in the quite different terms of a failure to "afford INEOS Polymers the option to buy the CRI business <u>at its fair market value</u>." But the resolution of that puzzling issue would go to the ultimate merits, which cannot and need not be reached for the reasons explained hereafter.

(Memorandum Opinion & Order, Jan. 9, 2008, Dkt. No. 64, at 2-3 (emphasis in original).) INEOS's Third Amended Complaint performs the same sleight of hand. An affiliate of BASF SE acquired Engelhard, the entity that owned the CRI business, but INEOS does not claim any right, nor did it take any steps, to match that $5 billion offer. Instead, INEOS argues that BASF Catalysts should be forced to sell the CRI business to INEOS at "fair market value" (Compl., at

5

30) – a term that is found nowhere in the Supply Agreement. Because there was no offer for the CRI business (only for Engelhard), there was no price for INEOS to match. Hence, the right of first refusal alleged by INEOS is unenforceable on the facts presented here.

**C. The Termination of the Supply Agreement.**

INEOS concedes that following Judge Shadur's ruling in February 2008, BASF Catalysts continued to supply CD-Catalysts to INEOS. (*See* Compl., ¶ 60.) However, because Judge Shadur had ruled that INEOS lacked standing to enforce the Supply Agreement, BASF Catalysts supplied the CD-Catalysts on new terms. (*See id.*)

In November 2008, INEOS "communicat[ed] . . . to its business partners" that it had entered into agreements with its bankers to "waive[] . . . certain debt covenants" (Compl., ¶ 66) in order to avoid a potential default on its loan agreements. Under Article 14 of the Supply Agreement, either party may terminate the contract upon such an event:

> Notwithstanding any other provisions of this Agreement and without prejudice to any other rights or remedies a party may have, if any proceeding is instituted by or against a party for bankruptcy, reorganization, insolvency, liquidation or dissolution; or if a party becomes insolvent or comes under judicial management; or if any person seeks appointment of or has appointed a receiver, trustee, liquidator or custodian for a party or for any assets of a party; **or if a party enters into an agreement with creditors regarding restructuring** or deferral of payment **of debt**, defaults under a loan, makes an assignment for the benefit of creditors of all or part of its assets, **or takes or suffers any similar action in consequence of debt**; then, in any of the above events, the other party may terminate this Agreement effective as of the last day of any Contract Year during which any of the above occurs, exists or continues, by giving notice thereof to the first party.

(*See* Compl., Ex. A, Art. 14, at 92 (emphasis added).) Following the Seventh Circuit's reversal of Judge Shadur's ruling on January 13, 2009, which reinstated the Supply Agreement, BASF Catalysts invoked Article 14 on January 16, 2009 to terminate the Supply Agreement because of the "action taken with respect to INEOS' debt." (*See* Compl., ¶¶ 62, 65.) BASF Catalysts'

6

notice of termination specified that the termination would be effective as of January 31, 2009, the last day of the contract year during which INEOS had entered into the waiver agreement with its creditors. (*See* Compl., ¶ 62.)

INEOS argues the termination was improper because it claims Article 14 is limited to situations of "bankruptcy and financial insolvency." (*See* Compl., ¶ 64.) Plainly, Article 14 is not so limited. Rather, Article 14 creates separate rights of termination "if any proceeding is instituted by or against a party for bankruptcy . . . <u>or</u> if a party becomes insolvent . . . <u>or</u> if a party enters into an agreement with creditors regarding restructuring . . . of debt . . . <u>or</u> takes or suffers any similar action in consequence of debt." (Compl., Ex. A-2, Art. 14, at 92 (emphasis added).) INEOS seeks to rewrite the termination right in Article 14, just as it seeks to add a "fair market value" term to the right of first refusal in Article 17.

## **ARGUMENT**

When considering a Rule 12(b)(6) motion, the court must assume the truth of all well pleaded factual allegations and construe all reasonable inferences in favor of the plaintiff. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). The Supreme Court recently made it clear that Rule 8 requires a plaintiff to do more than assert mere conclusory allegations to survive a 12(b)(6) motion. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950-51 (2009). The Court stated: "Only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 1950 (internal citations and quotations omitted). INEOS's Second, Third and Fourth Claims each fail to state a plausible claim upon which relief can be granted.

## I. INEOS'S SECOND CLAIM FAILS AS A MATTER OF LAW.

### A. The "Amended" Right of First Refusal Is Unenforceable.

The right of refusal that INEOS seeks to enforce in its Second Claim is unenforceable because it provides no method for determining the terms of sale of CRI or its assets, including the determination of a price. The original right of first refusal contained in the Supply Agreement did not suffer from this defect, because it granted Amoco Chemical only the right to match the terms of either an offer made for CRI or an offer made for its assets. (Compl., Ex. A, Art. 17.A, at 95-96.) Thus, if CRI received an "offer to transfer the entire ownership or control of CRI, or to transfer the ownership or control of certain assets of CRI," CRI or Phillips were required to afford Amoco Chemical "the option to buy all of CRI or to buy all of the certain assets of CRI, ... <u>whichever is applicable</u>, on terms and conditions no less favorable to Amoco than those contained in the offer." (*Id.* (emphasis added).) Amoco Chemical only had the right to match the terms and conditions of an offer to purchase all of CRI, or to purchase all of the certain assets of CRI, "whichever is applicable" – i.e., whichever offer was made.

INEOS does not contend that any offer was made to purchase CRI or its assets described in the Supply Agreement – indeed, its Complaint makes it clear there was no such offer – and hence there was no triggering offer for INEOS to match. Instead, INEOS alleges that the right of first refusal was "amended" by the 1999 and 2005 letter agreements to give Amoco Chemical (and now INEOS) the right to exercise the right of first refusal in the event that it "would be triggered by a change in control of <u>Engelhard</u>" – the parent of CRI. (Compl., ¶ 6.) According to INEOS, Engelhard's acquisition by an affiliate of BASF SE was a "change of control," triggering the right of first refusal and affording INEOS "the option to acquire the CRI business or the appropriate assets." (Compl., ¶¶ 11-12.)

This "amended" right of first refusal, however, is too indefinite to be enforced as a matter of law, because it added a triggering event without adding provisions for *exercise* of the right of first refusal that matched the new trigger. An amendment or modification to a contract must satisfy all of the criteria essential for a valid contract in order to be enforceable, *Int'l Bus. Lists, Inc. v. Am. Tel. & Tel. Co.*, 147 F.3d 636, 641 (7th Cir. 1998) (applying Illinois law), including the requirement that its terms and provisions be sufficiently detailed to enable the court to ascertain what the parties have agreed to do. *Academy Chi. Publishers v. Cheever*, 578 N.E.2d 981, 983 (Ill. 1991). "[P]rice is an essential ingredient of every contract for the transfer of property and must be sufficiently definite or capable of being ascertained from the contract between the parties." *Universal Scrap Metals, Inc. v. J. Sandman & Sons, Inc.*, 786 N.E.2d 574, 578 (Ill. App. Ct. 1975) (quoting *Miller v. Bloomberg*, 324 N.E.2d 207, 208 (Ill. App. Ct. 1975)).

Although a right of first refusal need not specify the exact price and terms, it must provide a method whereby those factors may be ascertained. *Universal Scrap Metals,* 786 N.E.2d at 578. A right of first refusal that fails to provide a method for determining the price and terms of sale is unenforceable as a matter of Illinois law. *Id.* at 578-79 (dismissing complaint because right of first refusal lacking method for determining price was indefinite and unenforceable). *See also Folsom v. Harr,* 75 N.E. 987, 988-89 (Ill. 1905) (right of first refusal that provided no method for determining price of property was incomplete and unenforceable); *Crestview Builders, Inc. v. Noggle Family Ltd. P'ship,* 816 N.E.2d 1132, 1134-37 (Ill. App. Ct. 2004) (same).

In the original right of first refusal, Amoco Chemical only had the right to match an offer for the purchase of CRI or the assets described in the Supply Agreement, and so that offer would supply the price and terms of sale. However, the "amended" right of first refusal alleged by

9

INEOS would be triggered by a "change of control" of Engelhard, and would compel BASF Catalysts to sell CRI or its assets to INEOS at some price that is neither specified nor described. Because the "amended" right of first refusal "fixed no price and fixed no mode of determining the price" of CRI or its assets upon a change of control of Engelhard,[5] it is unenforceable as a matter of law. *Folsom,* 75 N.E. at 989; *Universal Scrap Metals,* 786 N.E.2d at 579; *see also Crestview Builders,* 816 N.E.2d at 1136.

INEOS recognizes this enforceability problem, because it now attempts to supply a pricing term. INEOS's latest Prayer for Relief claims INEOS should be permitted to pay the "fair market value" for the CRI business. (*See* Compl., at 30.) The term "fair market value," however, is found nowhere in Article 17. The right of first refusal only allowed Amoco Chemical to match an offer for the CRI business that CRI or its parent determined they were "willing to accept." It did not give Amoco Chemical, or INEOS, the right to compel BASF Catalysts to sell the CRI business at a "fair market value" – a price that BASF Catalysts had never determined to accept. INEOS cannot rewrite the "amended" right of first refusal to impose terms that do not exist.[6]

### B. The Right of First Refusal Is Void As Against The Rule Against Perpetuities.

The original right of first refusal contained in the Supply Agreement is also itself void, because it violates the Texas common-law rule against perpetuities. According to its terms, the

---

[5] BASF Catalysts does not concede that the acquisition by an affiliate of BASF SE, a publicly-held corporation, of publicly-held shares of Engelhard could be considered a "change of control."

[6] Indeed, if Article 17 were permitted to be rewritten as INEOS suggests, it would render the caselaw regarding the criticality of a pricing term meaningless, because a party could suggest that a "fair market value" price term be implied into any right of first refusal that lacks a mechanism to determine price.

right of first refusal is perpetual and applies to all subsequent transferees of CRI or its assets until the Supply Agreement is terminated:

> 17.C. If Amoco shall fail to exercise its option to buy set forth in Article 17.A., CRI or Phillips shall be free to complete the proposed transaction falling under Article 17.A.(i) on the same terms and conditions as proposed, subject to the condition that the transferee shall be bound by this Agreement, including Article 17.A. to the same extent as CRI. If CRI or Phillips fails to complete the transaction set forth in Article 17.A. above on the same terms and conditions as proposed, the foregoing prohibition against CRI and Phillips shall continue in full force and effect, and Amoco's option under Article 17.A. shall thereafter apply to each subsequent offer or offers as set forth above.

(*See* Compl., Ex. A-2, Art. 17.C, at 97.) This restriction on alienation applies to real property, including the land on which the facility to be constructed by CRI sits. (Compl., Ex. A-1, Art. 1.K, at 6-7; Compl., Ex. A-2, Art. 17.A, at 95-96.)

Because the situs of the land is in Texas, this restriction is subject to the Texas common-law rule against perpetuities. *See United Mun. Leasing Corp. v. Lexington Corp. Props., Inc.,* No. 95 C 3212, 1996 WL 672253, at *5 (N.D. Ill. Nov. 18, 1996) (under Illinois law of conflicts, questions involving interests in real property are governed by the law of the situs), *reconsidered on other grounds,* 1997 WL 189298 (N.D. Ill. Apr 15, 1997); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 223(1) cmt. f. The Texas rule, which is embodied in the Texas state constitution, "provides that no interest is valid unless it must vest, if at all, within 21 years after the death of some life or lives in being at the time of the creation of the interest, plus the normal gestation period when necessary." *Garza v. Sun Oil Co.,* 727 S.W.2d 115, 116 (Tex. App. 1987) (citing *Henderson v. Moore,* 190 S.W.2d 800, 801 (Tex. 1946)). A grant or interest is void if, by any possible contingency, it could violate the rule. *Id.* at 116-17 (citing *Peveto v. Starkey,* 645 S.W.2d 770, 772 (Tex. 1982)).

Clearly this right of refusal violates the rule against perpetuities. It is not only unlimited in time, but it is obviously intended to be so, because it is binding on all subsequent transferees. *Cf. Mattern v. Herzog,* 367 S.W.2d 312, 316, 319 (Tex. 1963) (options to purchase property that are clearly intended to be unlimited in time, such as by binding successors and assigns indefinitely, violate the rule against perpetuities) (citing *London & S.W. Ry. Co. v. Gomm,* L.R. 20 Ch.D. 562 (1882)); *Maupin v. Dunn*, 678 S.W.2d 180, 183 (Tex. App. 1984) (option that binds successors and assigns violates the rule against perpetuities). As such, the right is unenforceable. *See Garza,* 727 S.W.2d at 117; *Maupin,* 678 S.W.2d at 183.

## III. INEOS'S THIRD CLAIM FAILS AS A MATTER OF LAW.

### A. INEOS Has Failed to Allege Performance of Conditions Precedent to Enforcement of Article 8.

INEOS's Third Claim alleges that BASF Catalysts breached Article 8 of the Supply Agreement, which states: "If CRI declines to proceed with a project proposed by Amoco to increase the capacity of the Plant, Amoco may agree to pay for all such costs (excluding any CRI and CRI Affiliate employee expenses), in which case the parties shall proceed with the project." (*See* Compl., ¶¶ 57-59; Compl., Ex. A-2, Art. 8.C, at 67.) INEOS claims BASF Catalysts breached this clause by refusing to continue "negotiations concerning capacity and other improvements to the Plant" proposed by INEOS. (*See* Compl., ¶ 59.)

However, nowhere does INEOS allege that it ever "agree[d] to pay for all such costs" of the project, which is an explicit condition precedent to any obligation for BASF Catalysts to proceed with the project. Article 8 specifically states that Amoco Chemical must "agree to pay for all such costs," only "in which case" CRI would have any obligation to "proceed with the project." (*See* Compl., Ex. A-2, Art. 8.C, at 67.) Where, as here, such agreement is lacking, CRI has no obligation to "proceed" with any aspect of the project, including negotiations.

Pleading the performance of conditions precedent is necessary to state a cause of action for breach of contract. *Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987) (applying Illinois law). INEOS's claim should be dismissed because it does not and cannot allege that it has complied with the conditions of Article 8. *See id.; Sara Lee Corp. v. Litton Indus. Automation Sys., Inc.,* No. 91 C 0971, 1992 WL 22693, at *2-3 (N.D. Ill. Feb. 6, 1992).

### B. INEOS Cannot Show That It Was Improper For BASF Catalysts To Rely on Judge Shadur's Ruling.

INEOS's Third Claim also alleges that following Judge Shadur's ruling in February 2008, BASF Catalysts wrongfully failed to perform Article 7.F of the Supply Agreement (which requires consultations between the parties on a monthly basis concerning the costs of the CRI business and means for reducing such costs), Articles 9.B and 13.A of the Supply Agreement (which require BASF Catalysts to provide certificates of analysis for each shipment of CD-Catalyst and monthly production reports with details of each production batch) and a Research and Development Agreement entered into by the parties contemporaneously with the Supply Agreement (which sets forth procedures for CD-Catalyst testing programs). (*See* Compl., ¶¶ 100-102.) However, Judge Shadur ruled that INEOS was not "within the limited universe of permitted assignees" who could enforce the Supply Agreement. (*See* Memorandum Opinion & Order, Jan. 9, 2008, Dkt. No. 64, at 7.) Until that ruling was overturned, INEOS was precluded from enforcing the Supply Agreement and the related Research and Development Agreement. *See Black & Decker, Inc. v. Robert Bosch Tool Corp.,* 500 F.Supp.2d 864, 868 (N.D. Ill. 2007) ("'A pending appeal does not prevent the application of collateral estoppel or res judicata.'") (quoting *Berry v. Ill. Dept. of Human Servs.,* No. 00 C 5538, 2001 WL 111035, at *14 (N.D. Ill. Feb. 2, 2001)); *see also Prymer v. Ogden,* 29 F.3d 1208, 1213 n.2 (7th Cir. 1994). BASF Catalysts cannot have breached contracts that INEOS had no standing to enforce.

## IV. INEOS'S FOURTH CLAIM FAILS BECAUSE BASF CATALYSTS' TERMINATION WAS PROPER.

INEOS's Fourth Claim alleges that BASF Catalysts' January 16, 2009 notice of termination was improper. The notice, attached as Exhibit A, states that "in view of action taken with respect to INEOS' debt, announced by INEOS on November 17, 2008, BASF Catalysts hereby terminates the Catalyst Supply Agreement pursuant to Article 14, effective as of January 31, 2009." INEOS's announcement, attached as Exhibit B, states that INEOS obtained a "waiver of bank covenants" from its lenders "for the next two quarters, conditional on submission of a new business plan in April 2009." (*See* Ex. B, at 4.)[7] In exchange for the waiver, INEOS paid its lenders "a fee of 50 bps [.5%] and increase the interest margins applicable to its senior debt facilities by 100-125 bps [1%-1.25%]." (*Id.*) In other words, INEOS agreed to pay its lenders a one-time fee and higher interest rates on its debt in exchange for its lenders' agreement to waive bank covenants that INEOS would have otherwise breached.[8] INEOS's Complaint acknowledges these actions. (*See* Compl., ¶ 66.)

Article 14 of the Supply Agreement gives either party the right to terminate the contract "if a party enters into an agreement with creditors regarding restructuring . . . of debt, . . . or takes or suffers any similar action in consequence of debt . . ." (Compl., Ex. A-2, Art. 14, at 92.) Under Illinois law, the terms of a contract are given their "plain and ordinary meaning." *Va. Surety Co., Inc. v. N. Ins. Co. of New York*, 224 Ill. 2d 550, 556, 866 N.E.2d 149, 153 (2007).

---

[7] The Court may consider BASF Catalysts' termination notice and INEOS's announcement because they are referenced in the Complaint and are central to INEOS's Fourth Claim. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

[8] According to the announcement, INEOS's debt level was 7.39 billion euros (*see* Ex. B, at 1), which means that it had agreed to pay millions of dollars for the one-time fee, in addition to millions of dollars a year in higher interest payments, for the waiver.

The plain and ordinary meaning of "restructure" is "to give a new structure or organization to." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1937 (2002).

Clearly the waiver agreement between INEOS and its lenders was "an agreement with creditors regarding restructuring . . . of debt" or "similar action in consequence of debt." INEOS entered into an agreement with creditors to modify the terms of its debt, whereby it agreed to pay a higher interest rate on the loans in exchange for its lenders' agreement to waive INEOS's default on the loans. A modification of debt, supported by millions of dollars of new consideration in order to avoid a potential default, is obviously a restructuring or other action in consequence of debt. *See, e.g,* March 30, 2007 Order, *The National Benevolent Assoc. v. Cain Brothers & Co.,* No. SA-06-CA-0035-RF (W.D. Tex.) (explaining that "[t]he modification of existing debt . . . easily comports" with the "commonly understood meaning" of the term "restructuring") (attached as Exhibit C). INEOS's claim for wrongful termination fails because BASF Catalysts' termination was indisputably proper.

## **CONCLUSION**

For the foregoing reasons, BASF Catalysts respectfully requests that this Court dismiss the Second, Third and Fourth Claims in INEOS's Complaint with prejudice.

Dated: July 8, 2009

Respectfully submitted,

     s/John N. Scholnick
John N. Scholnick
Roger Pascal
Nick Kahlon
**SCHIFF HARDIN LLP**
233 S. Wacker Drive
6600 Sears Tower
Chicago, IL  60606
312-258-5813 (direct)

*Attorneys for Defendant BASF Catalysts LLC*